## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

STANLEY MORSBERGER and )
CLEMENTINE ELUH, on their own behalf )
and on behalf of all others similarly situated, )
                       )
         Plaintiffs, )        Case No. _____
                       )
       v. )       **CLASS ACTION COMPLAINT**
                       )
ATI HOLDINGS, LLC, an Illinois limited )       **JURY TRIAL DEMANDED**
liability company; ATHLETIC & )
THERAPEUTIC INSTITUTE OF )
NAPERVILLE, LLC, d/b/a ATI PHYSICAL )
THERAPY, an Illinois limited liability )
company; ATI PHYSICAL THERAPY, )
INC., a Delaware corporation; RAY WAHL, )
an individual; JOHN DOES "1" THROUGH )
"10"; and JANE ROES "1" THROUGH "40", )
                       )
         Defendants. )
                       )
                       )

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Stanley Morsberger ("Morsberger") and Clementine Eluh ("Eluh"), on their own

behalves and on behalf of a class of similarly situated persons, by and through their attorneys

William F. Moore, Kelly L. Tucker and Laina M. Herbert of GRANT & EISENHOFER P.A. and

Richard S. Gordon and Sara E. Assaid of GORDON, WOLF & CARNEY, CHTD. sue Defendants

(1) ATI Holdings, LLC, (2) Athletic & Therapeutic Institute of Naperville, LLC, (3) ATI Physical

Therapy, Inc., (4) Ray Wahl, (5) John Does "1" through "10," and (6) Jane Roes "1" through "40,"

and allege as follows:

### INTRODUCTION

1.     This Class Action Complaint and Demand for Jury Trial (the "Complaint")

challenges the predatory, fraudulent, and illegal billing practices of ATI Holdings, LLC, Athletic

& Therapeutic Institute of Naperville, LLC, ATI Physical Therapy, Inc., Ray Wahl, John Does "1" through "10," and Jane Does "1" through "40" (hereinafter, collectively, "Defendants"), in violation of Defendants' statutory, contractual, and common law obligations when billing and collecting money from their patients, as well as in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO").

2.      Plaintiffs' complaint does not challenge, in any way, the Defendants' provision of professional physical therapy services.  Instead, this suit seeks to end Defendants' illegal and fraudulent billing practices and recover recompense for Plaintiffs and Class members (defined herein) that Defendants have stolen from them by submitting thousands of fraudulent bills in the name of ATI Physical Therapy at full, rack-rate cost of services, instead of the insurance-negotiated rates they are contractually obligated to charge.  Defendants typically engage in this fraudulent practice when patients are victims of an accident.

3.      Defendants' billing practices are unlawful and predatory, including, *inter alia*, because (a) Defendants are and were prohibited by contractual arrangements with insurers from charging any amount to Plaintiffs and Class members in excess of insurance-negotiated rates; and (b) Defendants agree and represent to Plaintiffs and Class members that they will submit their claims to their insurance carriers for payment, but in actuality, refuse to do so for their own financial gain.

4.      Defendants' billing practices are also contrary to Defendants' advertisements and representations to patients.  Defendants claim to be a preferred provider for insurance carriers and health care service plans, including Plaintiffs' health insurance providers and Medicaid, and represent, warranty, and guarantee to patients that they will submit *all* patient claims to Medicaid, their insurance carrier, or health care service plan, as applicable.  Yet, Defendants do no such thing.

2

5.     Defendants fall into the following categories:

a.     Defendants ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC d/b/a ATI Physical Therapy, and Defendants Jane Roes "1" through "40" (collectively, the "Subsidiary Defendants") who have falsely billed Plaintiffs and Class members are subsidiaries of ATI Physical Therapy, Inc.;

b.     Defendant ATI Physical Therapy, Inc. is a nationally recognized outpatient physical therapy provider with 889 owned clinics, along with 23 clinics under management service agreements, located in 24 states.  ATI Physical Therapy, Inc. manages the operation of the Subsidiary Defendants and receives and utilizes funds from their operation (with the Subsidiary Defendants, the "ATI Defendants");

c.     Defendant Ray Wahl ("Wahl") is the current Chief Operating Officer of ATI Physical Therapy, Inc. and formerly oversaw ATI Physical Therapy Inc.'s east coast operations, including in the State of Maryland and, along with Defendants John Does "1" through "10" (collectively, the "Management Defendants"), are persons associated with ATI Physical Therapy who are involved in the predatory scheme committed against Plaintiffs and Class members and/or who set and/or continued the policies followed by the Subsidiary Defendants in furtherance of the fraudulent scheme committed against Plaintiffs and Class members.

6.     Defendants associated together under the "ATI Physical Therapy" umbrella to advertise, market, and otherwise conduct business as one entity. Defendants jointly hold themselves out to the general public to be operating as or on behalf of ATI Physical Therapy.

7.     At all times relevant hereto, the ATI Defendants utilized the same centralized billing and invoice processing department that is located in Illinois and overseen by the Management Defendants to carry out their fraudulent overbilling scheme.

8.     Defendants conduct business using the name "ATI Physical Therapy" and have established a central website, http://www.atipt.com, on which they advertise ATI Physical Therapy services.  This website solicits business for all ATI Physical Therapy locations and contains false representations and disclosures concerning Defendants' billing practices, including Defendants' assurances to each of their patients that Defendants will always bill health insurance when such insurance is available.

9.     To implement this fraudulent scheme, the Management Defendants set policies that the ATI Defendants were required to follow that generated large-scale fraudulent billing to Plaintiffs and Class members, as follows:

a.     When an insured patient presents at a Subsidiary Defendant location for treatment, upon suspicion that the patient's injuries are the result of an injury caused by a third party or as to which third-party liability may attach, the Subsidiary Defendants collect a patient's health insurance information, but then refuse to submit claims to the patient's health insurance carrier for payment, or refuse to collect a patient's health insurance information at all;

b.     When Plaintiffs and Class members cease their treatment, the Subsidiary Defendants bill them for their physical therapy services at the full cost of services before any discount negotiated by their insurers (the "rack-rate cost of services"), instead of billing at the patients' insurance negotiated rates;

4

     c.     If Plaintiffs and Class members do not agree to pay the rack-rate cost of services, the Management Defendants cause ATI Physical Therapy to place a lien on their third-party recoveries for this full cost of treatment;

     d.     ATI Physical Therapy processes and collects these fraudulent payments from Plaintiffs and Class members;

     e.     These fraudulent billing practices are employed by the Management Defendants using the ATI Defendants as a vehicle to bill for the physical therapy services provided by the Subsidiary Defendants in a successful effort to fraudulently inflate the charges submitted to and paid by Plaintiffs and Class members;

     f.     As a result of this pattern of fraudulent billing practices, Defendants collect from Plaintiffs and Class members and retain often multiples of the amount to which they were entitled for services rendered pursuant to their agreements with health insurers and their representations to patients.

10.     Even in circumstances where the ATI Defendants had previously billed an existing insured ATI Defendants' patient's insurance for treatment, when the ATI Defendants subsequently learned that the patient's injuries were the result of an injury caused by a third party or as to which third-party liability may attach, under this fraudulent scheme, the ATI Defendants were required to follow the same or similar policies set by the Management Defendants and refuse to submit the patient's claim to insurance and charge the full rack-rate cost of services.

11.     The impact of Defendants' scheme is often devastating to patients who have recovered money in a personal injury lawsuit, who then forfeit much more of their recovery than anticipated. Plaintiffs and Class members were damaged in tangible ways by this practice since this practice denies them the benefits of their health insurance's lower medical costs and requires

5

them to pay Defendants a greater percentage of their settlement/judgment during the lien resolution process. Each Plaintiff and Class member paid hundreds, if not thousands, of dollars in excess of what Defendants were actually owed had the claims been submitted through his or her health insurer.

12. At all times relevant to this Complaint, Defendants knowingly acted in derogation of their representations and obligations to their patients.

13. Through their association, Defendants developed and agreed upon the uniform and systematic scheme described herein to bill certain patients differently from other patients—even though these patients maintained health insurance, which obligated Defendants to submit their patients' claims through their health insurers, who would have paid Defendants at a substantial discount off of Defendants' rack-rate costs of service. Defendants, using the United States mail and electronic wire transmissions, billed Plaintiffs and Class members at their rack-rate costs of service, because doing so would result in greater revenue for Defendants.

14. Defendants developed their predatory, fraudulent, and misleading billing scheme with the specific intent to deceive and defraud Plaintiffs and Class members by billing and collecting funds in excess of that which they would have been legally permitted to collect pursuant to their agreements with their patients and their patients' health insurance.

15. As a result of this scheme, Plaintiffs and Class members were damaged. Pursuant to the ATI Defendants' provider agreements with health insurers, if the ATI Defendants fail to submit their claims to their insurance providers Defendants are required to hold Plaintiffs and Class members harmless. Thus, because Defendants did not submit Plaintiffs' and Class members' claims to their health insurers, Defendants were entitled to zero compensation for the billed services. Plaintiffs and Class members were also harmed and Defendants were unjustly enriched,

in that Plaintiffs and Class members paid more to Defendants than they would have paid had Defendants submitted the patients' claims through their health insurance.

16. Defendants massively profit from victimizing the individuals who have been improperly overcharged for ATI's services, enjoying their financial windfall and ill-gotten gains at the expense of patients.

17. Accordingly, Plaintiffs bring this action to redress Defendants' illegal billing scheme, which violates both federal and state law, including RICO and Illinois's and Maryland's unfair and deceptive trade practices statutes. Plaintiffs seek all available remedies, including compensatory, consequential, treble, and punitive damages, disgorgement of revenues, pre- and post-judgment interest, declaratory relief, injunctive relief, attorneys' fees and costs, and any other relief the Court may deem just and proper.

## PARTIES

### A. PLAINTIFFS

18. Plaintiff Stanley Morsberger is a citizen of Maryland, residing in Baltimore County, Maryland. Following a vehicle accident in Baltimore County, Mr. Morsberger sought treatment from ATI Physical Therapy and ultimately paid ATI Physical Therapy more for physical therapy services than he would have paid had ATI Physical Therapy submitted his claims to Mr. Morsberger's health insurer or had ATI Physical Therapy otherwise complied with its contractual obligations with his health insurer.

19. Plaintiff Clementine Eluh is a citizen of Maryland, residing in Montgomery County, Maryland. Ms. Eluh was hit by a car, following which she sought treatment from ATI Physical Therapy and ultimately paid ATI Physical Therapy more for physical therapy services than she would have paid had ATI Physical Therapy billed Ms. Eluh's health insurer or had ATI Physical Therapy otherwise complied with its contractual obligations with her health insurer.

7

B.    THE SUBSIDIARY DEFENDANTS

20.    Defendant ATI Holdings, LLC is an Illinois limited liability company that provides physical and rehabilitation therapy services throughout the United States with its principal place of business located at 790 Remington Boulevard, Bolingbrook, Illinois 60440.

21.    Defendant Athletic & Therapeutic Institute of Naperville, LLC is an Illinois limited liability company providing physical therapy services and facilities throughout the United States with its principal place of business located at 790 Remington Boulevard, Bolingbrook, Illinois 60440.

22.    Upon information and belief, defendants Jane Does "1" through "40" are subsidiaries of ATI Physical Therapy, Inc. and reside in and are citizens of the States of Alaska, Alabama, Arizona, Delaware, Georgia, Iowa, Illinois, Indiana, Maryland, Michigan, Missouri, North Carolina, Nebraska, New Mexico, Nevada, Ohio, Oregon, South Carolina, Tennessee, Texas, Washington, and Wisconsin and the Commonwealths of Pennsylvania and Virginia.  Jane Does "1" through "40" are not presently identifiable, but are associated with Defendants and ATI Physical Therapy and are involved in the fraudulent scheme committed against Plaintiffs and Class members.

C.    ATI PHYSICAL THERAPY, INC.

23.    Defendant ATI Physical Therapy, Inc., formerly known as Wilco Holdco, Inc., is a Delaware corporation with its principal place of business with its principal place of business located at 790 Remington Boulevard, Bolingbrook, Illinois 60440.

D.    THE MANAGEMENT DEFENDANTS

24.    Upon information and belief, Defendant Ray Wahl resides in and is a citizen of the Commonwealth of Pennsylvania.  Wahl is ATI Physical Therapy, Inc.'s Chief Operating Officer. Prior to in or around August 2019, Wahl served as the East Division President, overseeing

8

operations in Delaware, Maryland, Pennsylvania, Michigan, Ohio, North Carolina, South Carolina, and Georgia. Wahl receives restricted stock units of ATI Physical Therapy, Inc. in connection with his management of ATI Physical Therapy and thus has an ownership interest in ATI Physical Therapy. The value of that compensation depends on ATI Physical Therapy's financial success.

25.     Upon information and belief, Defendants John Does "1" through "10" are other members of ATI Physical Therapy, Inc.'s management who set the billing and collection policies challenged in this action and reside in and are citizens of the State of Illinois. John Does "1" through "10" are not presently identifiable, but are associated with the Defendants and ATI Physical Therapy and are involved in the fraudulent scheme committed against Plaintiffs and Class members.

## JURISDICTION, VENUE AND DEMAND FOR TRIAL BY JURY

26.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States and 18 U.S.C. § 1964(c), because this action alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

27.     This Court also has subject-matter jurisdiction over this dispute pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interests and costs. There are more than 100 putative Class members; and at least some members of the proposed Class have a different citizenship from the Defendants. Moreover, at least one Plaintiff is a citizen of a foreign state, and the Management Defendants, ATI Physical Therapy, Inc., and most, if not all, of the Subsidiary Defendants are all citizens of Illinois.

28. This Court also has subject-matter jurisdiction over Plaintiffs' and the proposed Class's claims pursuant to 28 U.S.C. § 1367(a).

29. Venue is proper in this Court under 28 U.S.C. § 1391(a)-(d), because substantial parts of the events or omissions giving rise to the claims occurred in the District and/or a substantial part of property that is the subject of the action is situated in the District. Venue is also proper in this Court as one or more of the Defendants reside in this District and the principal place of business of one or more Defendants is in this District.

30. This Court has personal jurisdiction over ATI Physical Therapy, Inc., ATI Holdings LLC, and Athletic & Therapeutic Institute of Naperville, LLC because their principal places of business are within this District and ATI Holdings, LLC and Athletic & Therapeutic Institute of Naperville, LLC are incorporated in the State of Illinois.

31. This Court has personal jurisdiction over all Defendants under the United States Constitution because Defendants conduct substantial business within this District—there are multiple Defendant-owned ATI Physical Therapy facilities within this District and Defendants engage in commerce in this District as described herein, including as to Plaintiffs. Therefore, a substantial part of the events and/or omissions giving rise to the claims and Plaintiffs' tortious injuries occurred, in part, within this District and the State of Illinois.

32. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury as to all matters triable thereby.

## **FACTS APPLICABLE TO ALL COUNTS**

33. This is an action against the Defendants resulting from their uniform and consistent conduct in billing to and collecting payments from Plaintiffs and Class members to which they were not entitled, as well as their conspiracy to engage in such conduct, and from their conduct in

aiding and abetting the unlawful conduct described herein, as well as their violations of state statutory and common law.

**A.** **DEFENDANTS ARE CONTRACTUALLY OBLIGATED TO CHARGE INSURED PATIENTS NO MORE THAN THEIR INSURANCE-NEGOTIATED RATES**

34. Defendants have entered into contracts with private health insurance carriers (including, but not limited to Plaintiffs' insurers) to accept as payment in full the contractual allowances for the patient's physical therapy treatment. Contractual allowances are the difference between what a healthcare provider bills for the services rendered versus what it will contractually be paid based on the terms of its contracts with third-party insurers and/or government programs. That is, Defendants, in consideration of being a covered provider under its provider agreements with health insurers, agreed to not charge insureds in any amount greater than the insurance-negotiated rate.

35. Defendants are precluded by contract with health insurance carriers from seeking payment for its services above the contractual allowances from the insured patient.

36. Defendants are also precluded by contract with the health insurance carriers (such as Named Plaintiffs' insurers) from attempting to collect from a covered patient **at all**, if Defendants fail to submit physical therapy bills for payment to the patient's insurer within the time provided by the provider contract between Defendants and the insurer (referred to herein as "Hold Harmless Provisions").

37. For example, Kaiser Foundation Health Plan's standard Form Health Care Services Agreement (attached hereto as **Exhibit 1**) requires providers to agree to the following:

> **3.1.1 Submission of Claims**. Unless otherwise specified, *Provider shall submit to the responsible Payor a Claim in the format and within the shortest time frames specified in the Provider Manual*, Exhibit 3 (Billing and Payment), and/or required by applicable Law ("Claims Submission Period") and with such reasonably relevant additional information as may be requested from time to time by the Payor. *If Provider fails to comply with the Claims Submission Period requirements*, the

11

Payor shall have no obligation to pay for such Claims, and ***Provider shall be prohibited from billing the Member as set forth in Section 3.3 (Member Hold Harmless)***. Nothing in this Section shall supersede applicable Law.

(Emphases added).

38.     Kaiser Foundation Health Plan's standard Form Health Care Services Agreement

also includes a "Member Hold Harmless" Provision, which states:

**3.3 <u>Member Hold Harmless</u>**. Except as expressly provided in Section 3.5 (Billing Members), ***Provider (and any Subcontractors) shall look solely to the responsible Payor for compensation for Covered Services rendered to Members, and Provider agrees that in no event (including non-payment by Payor, insolvency of Payor or breach of this Agreement) shall Provider (or Subcontractor) bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against any Member***, person acting on the Member's behalf, the State of Hawaii, an Official, or any Medicaid or QUEST Integration plans, ***for Covered Services provided under this Agreement***. Without limiting the foregoing, Provider shall not seek payment from Members for reasons including (i) amounts denied by Payor because billed charges were not customary or reasonable, (ii) Provider's failure (a) to obtain Authorization for Services delivered, (b) to submit clinical data promptly, or (c) to submit a Claim in accordance with the appropriate billing procedures or within the appropriate time frame, or in accordance with commonly accepted standard coding practices[.]

(Emphases added).

39.     Aetna's standard Provider Agreement (Aetna Network Service LLC's Provider

Agreement is attached hereto as **Exhibit 2**) includes similar hold harmless provisions that prohibit

covered Aetna providers from collecting payments from members if it fails to submit claims to

Aetna in a timely manner under its "Provider Obligations," including that:

**1.5 <u>Member Billing</u>. *Provider agrees that Members will not be billed or charged any amount for Covered Services, except for applicable copayments, coinsurance and deductible amounts. If services are not reimbursed because of Provider's failure to comply with its obligations under this Agreement*** (e.g., for late submission of claims), ***Members may not be billed for those services***. A Member may be billed for services that are not Covered Services under the Member's Plan (including for services that are not considered "medically necessary" under a Plan) as long as the Member is informed that those services are not covered and has agreed, in advance, to pay for the services. This section will survive the termination of this Agreement.

(Emphases added).

40.    The vast majority, if not all, health insurance and health care service plan providers with whom Defendants contract include Hold Harmless Provisions in their provider agreements.

41.    Medicare and Medicaid provider agreement provisions require that providers, such as Defendants, submit claims to Medicare and Medicaid and prohibit billing a patient directly for covered services, such as physical therapy visits and likewise include Hold Harmless Provisions.

42.    These Hold Harmless Provisions are included in provider agreements for the benefit of health insurance plan members, such as Plaintiffs and Class members, as they do not directly benefit insurance providers, and instead, directly benefit Plaintiffs and Class members by excusing Plaintiffs and Class members from submitting payments to providers who fail to meet their contractual obligations to submit claims to their insurers, such as Defendants and help patients avoid surprise medical bills.

43.    In addition to the contractual prohibition of these fraudulent and misleading billing practices, various state laws, including in Maryland where Plaintiffs reside, require that when patients such as Plaintiffs and Class members are insured, health care providers must submit their claims to their insurance carriers and not seek payment directly from the insureds.[1]

44.    Defendants' failure to submit Plaintiffs' and Class members' claims to their insurance companies results in a breach of their agreements with providers and the inability of

---

[1] *See*, *e.g.*, Md. Code Ann., Ins. § 15-701(a)(2); Md. Code Ann., Ins. § 14-205(a); *see also* Maryland Dept. of Health & Mental Hygiene June 25, 2015 Memorandum re: Incorrect Billing of Participants with Medicaid, *available at* https://mmcp.health.maryland.gov/Documents/PT%2039-15%20FINAL.pdf; 2021 Maryland Medical Assistance Program Professional Services Provider Manual (effective Jan. 2021), at 20, *available at* https://health.maryland.gov/mmcp/Documents/2021%20Professional%20Services%20Provider%20Manual%20website.pdf; Medicare Interactive, Participating, non-participating, and opt-out providers, *available at* https://www.medicareinteractive.org/get-answers/medicare-covered-services/outpatient-provider-services/participating-non-participating-and-opt-out-providers.

Defendants to collect any payments from Plaintiffs and Class members. This renders Defendants' attempts and successful efforts to collect payments from Plaintiffs and Class members fraudulent, particularly to the extent Defendants attempt to and do collect payment in any amount in excess of insurance-negotiated rates

**B.** **DEFENDANTS MAKE FALSE AND MISLEADING STATEMENTS TO PLAINTIFFS AND CLASS MEMBERS CONCERNING INSURANCE COVERAGE**

45. In addition to being contractually prohibited from collecting the rack-rate cost of services from Plaintiffs and Class members as alleged herein, Defendants also widely represent, advertise, and communicate, including on an "ATI Physical Therapy" Web site and "ATI Physical Therapy" client intake forms, that they accept and will bill patients' health insurance carriers for patients' treatment.

46. For example, Defendants advertise extensively that their physical therapy services are covered by almost all insurance and that they will verify patient insurance to ensure Plaintiffs' and Class members' treatment at Defendants' facilities is covered, stating: "WE'LL VERIFY YOUR INSURANCE. ATI accepts virtually all major insurance carriers and participated with many local provider networks. Our friendly staff can **verify insurance for you** or call 855-MY-ATIPT (855-692-8478)." (emphasis in original). Indeed, Defendants list as one part of "The ATI Difference" that Defendants will "**verify insurance** for you." (emphasis in original).

47. On another web page, Defendants state that "[w]ith exceptional, patient-centered care, trusted expertise and remarkable outcomes, our goal is to exceed customers' expectations— every day in every clinic." Later on the same page, Defendants highlight that their physical therapy providers "**Accept Most Insurance**" (emphasis in original).

48.     Defendants' web site also represent that the cost of service "depends on your . . . insurance plan" and further represent that insured patients will only be responsible for their insurance deductible, copayment, or coinsurance.

49.     Defendants' Physical Therapy Code of Conduct and Compliance Program Guide, which is publicly available to Plaintiffs and Class members on Defendants' Web site[2], assures that Defendants are "100% committed to following all laws, government regulations, third-party payor agreements, and our own legal and compliance policies."  It further represents:



**Billing, Coding and Documentation**

ATI is committed to fair and accurate billing in accordance with all applicable federal and state laws and regulations, payor rules and procedures, and ATI policies and procedures. We understand that all claims for services submitted to any private insurance program or payor, Medicare, Medicaid, or other federally funded healthcare programs, have to be accurate and correctly identify and document the services ordered and performed. ATI will bill only for services actually provided and documented in the patient's medical records. ATI clinical staff will ensure that all billing to payors and patients accurately represents the services provided in a truthful manner, and that the clinical documentation adequately supports the billing of the services as required by the payor contract.

ATI will not engage in and/or permit known up-coding or unbundling of services rendered and/or other improper billing practices intended to increase reimbursement. ATI will not compensate employees in any way to improperly up-code claims.

50.     When patients arrive for their first treatment or intake at ATI's facilities, ATI's practice is to screen all patients, take their insurance information, make determinations for their treatment, and determine their source of payment.

51.     Defendants provide their "Notice of Financial Responsibility" to patients at their first visit and as part of the client intake process.[3]  The Notice of Financial Responsibility forms

---

[2]     https://www.atipt.com/sites/default/files/2016%20Compliance%20Program%20Guide_0.pdf (last visited Oct. 15, 2021).

[3] *See, e.g.*, "Notice of Financial Responsibility" included with ATI's New Patient Packet, *available at* https://www.atipt.com/sites/default/files/pdf/New-Patient-Packet-Blank.pdf (last visited Mar. 4, 2022).

collect information about the patient's insurance carrier and policy and represents: "We will submit charges for your visits to your primary and subsequent insurance companies."[4]

### C. THE DEFENDANTS' FRAUDULENT BILLING SCHEME

52.     ATI Physical Therapy, Inc. and the Subsidiary Defendants each serve different roles in this fraudulent billing scheme.  ATI Physical Therapy, Inc. does not actually provide the physical therapy services that enable the scheme.  Instead, the Subsidiary Defendants provide such services, fail to submit patient claims to their insurers or health care service plan providers, and unfairly and unlawfully bills patients like Plaintiffs and Class members, while ATI Physical Therapy, Inc. collects the ill-gotten gains.

53.     The Management Defendants control the day-to-day operations, exercise supervisory authority over, and have a financial interest in ATI Physical Therapy and the Subsidiary Defendants, and, accordingly, have controlled, directed, and received a financial benefit from the fraudulent scheme alleged herein.

54.     Defendant Ray Wahl is the Chief Operating Officer for ATI Physical Therapy, Inc. and is responsible for day-to-day operations across the company's national footprint.  Prior to serving in that role, he was ATI Physical Therapy, Inc.'s East Division President, and oversaw ATI Physical Therapy, Inc.'s operations in Delaware, Maryland, Pennsylvania, Michigan, Ohio, North Carolina, South Carolina, and Georgia.  In each of these roles, Wahl, along with John Does "1" through "10," had responsibility for management and policies of Defendants, including with regard to its advertisements and billing practices alleged herein.

55.     Under the direction and control of the Management Defendants, the Subsidiary Defendants implemented a massive fraudulent scheme in which they billed to and collected from

---

[4] *See id.*

16

Plaintiffs and Class members at least tens of millions of dollars that they were not entitled to bill for or receive for the benefit of the enterprise—"ATI Physical Therapy." Throughout their association-in-fact, Defendants operated "ATI Physical Therapy" to have a common and routine policy and practice when patients presented for treatment when third-party liability may be invoked. Specifically, when Defendants determine that a patient may have a civil claim against a third party for injuries, Defendants, without full disclosure to the patient and contrary to their contractual obligations and representations to patients and the public, refuse to submit those patients' physical therapy bills to their insurance providers.

56. Instead, Defendants wait until the third-party litigation or claims are resolved and bill and collect a higher payment from the patient, such as by placing, or threatening to place, a medical lien on that third-party tort recovery by the patient.

57. Defendants engage in these practices in circumvention of their contractual obligations to submit a patient's physical therapy bills to their health insurance carriers, despite their obligations to accept a payment equal to the contractual allowances paid by the patient's health insurance carrier in satisfaction of the bill, and despite their obligations to hold the patient harmless from any amounts owed other than copays, coinsurance, and/or deductibles, and despite the prohibition from billing patients for **any** services rendered if Defendants have not timely submitted claims to patients' health insurers.

58. Defendants make their unlawful demands through the ATI Defendants which seek and collect payment for physical therapy bills through means other than billing their insurers, including: demanding payment directly from patients, wrongfully placing liens upon patients' third-party tort claims, seeking payment benefits from the patients' auto insurers, turning patients over to collection agencies, and/or reporting said patients to credit bureaus, among other things.

17

59.     Defendants engage in this conduct despite knowing that the patients, such as Plaintiffs and Class members, are insured and that Defendants are contractually and legally obligated to submit those bills to the patient's insurance carriers for payment in the negotiated, reduced amount.

60.     Despite their representations to patients and their contractual and legal obligations to bill a patient's insurance, Defendants do routinely engage in, permit, and encourage improper billing practices intended to increase reimbursement in violation of their representations and obligations under the law.

61.     Defendants' false and misleading advertisements and omissions concerning their billing practices tend to deceive a consumer into believing that Defendants will bill his or her insurance carriers for the services rendered, when in fact Defendants have no intention to, and do not, do so.

62.     Defendants knowingly participate in the scheme to defraud Plaintiffs and Class members by disclosing their unlawful and fraudulent billing practices through the use of United States mail and electronic or telephonic communications for the purpose of executing this scheme.

63.     Defendants engaged in, and effect interstate commerce, in that fraudulent bills were sent and collected upon and advertisements were made across state lines, including, without limitation, Maryland and Illinois, as set forth herein.  In many instances, transactions were funded by wire or check or electronic credit or debit transactions that originated from outside of the State of Illinois to Defendants located and conducting business in Illinois.

64.     In furtherance of their fraudulent scheme, Defendants also on numerous occasions used and caused to be used mail depositories of the U.S. Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed

mailable matters from said depositories. These mailings included, but were not limited to, the mailing by Defendants of documents related to fraudulent billing to Plaintiffs and Class members; the distribution of illicit proceeds of the racketeering conspiracy; the mailing and distribution among Defendants of contracts, advertisements, and other documents used in the transactions of Plaintiffs and Class members; and the mailing of additional documents that facilitated the operation of Defendants' fraudulent scheme.

65.     In furtherance of their fraudulent scheme, Defendants also on numerous occasions used and caused to be used the wires, including, but not limited to, the electronic mailing by Defendants of documents related to fraudulent billing to Plaintiffs and Class members; the distribution of illicit proceeds of the racketeering conspiracy; the false and misleading advertisements to Plaintiffs and Class members; and the electronic mailing of additional documents that facilitated the operation of Defendants' fraudulent scheme.

66.     In particular, Defendants used the United States mail system and wires in furtherance of their scheme in no fewer than the following instances:

| RICO Event | Name | Document Mailed or E-mailed | How sent | Date | From | To | Collection Address | Amount Billed ($) |
|---|---|---|---|---|---|---|---|---|
| 1 | Jane Smith 1 | Statement | Mail | 7/6/17 | Athletic & Therapeutic Institute IL, IN, WI 4947 Paysphere Circle Chicago, IL 606744947 | Illinois | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh, PA 15250-7863 | 14,605.83 |
| 2 | Jane Smith 1 | Statement | Mail | 7/6/17 | Athletic & Therapeutic Institute IL, IN, WI | Illinois | Athletic & Therapeutic Inst. | 2,520.30 |

| RICO Event | Name | Document Mailed or E-mailed | How sent | Date | From | To | Collection Address | Amount Billed ($) |
|---|---|---|---|---|---|---|---|---|
| | | | | | 4947 Paysphere Circle Chicago, IL 606744947 | | P.O. Box 371863 Pittsburgh, PA 15250-7863 | |
| 3 | Jane Smith 1 | Affidavit of Person Mailing Notice (of lien sent to attorney) | Mail | 3/20/17 | ATI Physical Therapy Auto Patient Account Specialist Colleen Rhodes 790 Remington Blvd. Bolingbrook, IL 60440 | Illinois | | |
| 4 | Jane Smith 1 | Email re: lien inquiry | E-mail | 1/11/19 | Technical Recovery Division Healthcare and Family Services P.O. Box 19174 Springfield, IL 62794-9174 | | | |
| 5 | Jane Smith 1 | Statement | Mail | 3/7/18 | Athletic & Therapeutic Institute IL, IN, WI 4947 Paysphere Circle Chicago, IL 606744947 | Illinois | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh, PA 15250-7863 | 24,148.91 |
| 6 | Jane Smith 1 | Letter to Attorney | Mail | 4/25/17 | ATI Physical Therapy Corporate HQ | Illinois | | |

| RICO Event | Name | Document Mailed or E-mailed | How sent | Date | From | To | Collection Address | Amount Billed ($) |
|---|---|---|---|---|---|---|---|---|
| | | | | | 790 Remington Blvd. Bolingbrook, IL 60440 | | | |
| 7 | Jane / John Smith 2 | Patient Ledger Report | | 4/26/18 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 7,359.43 |
| 8 | Jane / John Smith 3 | Patient Ledger Report | | 2/16/17 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 1,465.76 |
| 9 | Jane / John Smith 3 | Email from ATI to attorney | Email | Approx. 9/2019 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | Pennsylvania | ATI Holdings, LLC Attn: Lynda Meyer 790 Bolingbrook, IL 60440 | 1,026 |
| 10 | Jane Smith 4 | Patient Ledger Report | | 11/27/19 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 3,969.18 |
| 11 | Jane Smith 4 | Facsimile from ATI to attorney | Facsimile | 5/28/20 | ATI Facsimile: 410-822-3014 | Maryland | | 1,700.00 |
| 12 | Plaintiff Morsberger | Patient Ledger Report | | 6/19/19 | ATI Physical Therapy 790 Remington Blvd. | | | 6,945.97 |

| RICO Event | Name | Document Mailed or E-mailed | How sent | Date | From | To | Collection Address | Amount Billed ($) |
|---|---|---|---|---|---|---|---|---|
| | | | | | Bolingbrook, IL 60440 | | | |
| 13 | Plaintiff Morsberger | Facsimile from ATI to attorney | Facsimile | 9/9/20 | | Maryland | | 4,000 |
| 14 | Jane Smith 5 | Patient Ledger Report | | 2/27/19 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 6,454.71 |
| 15 | Jane Smith 6 | Patient Ledger Report | | 10/8/19 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 10,433.71 |
| 16 | John Smith 7 | Patient Ledger Report | Facsimile | 1/9/19 | ATI Physical Therapy 790 Remington Blvd. Bolingbrook, IL 60440 | | | 709.50 |
| 17 | Plaintiff Eluh | Statement | Mail | 1/3/19 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 4,039.29 |
| 18 | Plaintiff Eluh | Statement | Mail | 12/18/18 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 5,052.35 |

| RICO Event | Name | Document Mailed or E-mailed | How sent | Date | From | To | Collection Address | Amount Billed ($) |
|---|---|---|---|---|---|---|---|---|
| 19 | Plaintiff Eluh | Statement | Mail | 12/5/18 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 4,039.29 |
| 20 | Plaintiff Eluh | Statement | Mail | 11/19/18 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 5,052.35 |
| 21 | Plaintiff Eluh | Statement | Mail | 11/6/18 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 4,039.29 |
| 22 | Plaintiff Eluh | Statement | Mail | 7/24/18 | ATI Physical Therapy 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 3,020.95 |
| 23 | Plaintiff Eluh | Statement | Mail | 4/13/18 | ATI Physical Therapy DE, GA, MD, MI, MO, PA, WA 4947 Paysphere Circle Chicago IL 606744947 | Washington, DC | Athletic & Therapeutic Inst. P.O. Box 371863 Pittsburgh PA 1520-7863 | 4,039.29 |

67.     Upon information and belief, Defendants further used the wires and mail to facilitate the operation of and to operate the fraudulent scheme described herein, and to communicate with each other during the course of the scheme through telephone calls, facsimiles, mail transmissions, e-mail transmissions, and wire transfers of money resulting from and in furtherance of the fraudulent scheme.

68.     The Subsidiary Defendants and Management Defendants were legally obligated to act honestly and with integrity in connection with the submission of charges to Plaintiffs, Class members, and their insurance providers.

69.     Instead, Defendants mailed or used electronic wires to bill and collect fraudulently obtained payments in interstate commerce, in furtherance of their fraudulent scheme, and knowing the same to have been stolen, converted, or taken by fraud, in connection with hundreds, if not thousands of similar transactions from Plaintiffs and Class members to which they were not legally entitled.

70.     These acts were related, as they had the similar purpose of concealing and affirmatively representing the true amount owed by Plaintiffs and Class members to Defendants, and they used the same methods of commission by concealment and affirmative representation.

71.     The Subsidiary Defendants' and Management Defendants' enterprise, ATI Physical Therapy, has operated continuously for no less than four years to the present and has affected hundreds to thousands of patients' transactions through their systematic scheme to fraudulently bill Plaintiffs and Class members for amounts that Defendants were prohibited from collecting.

72.     Through the Subsidiary Defendants' and Management Defendants' improper and unlawful fraudulent practices, Defendants receive a windfall.

73.     Nevertheless, the enterprise described herein did not exist solely for the purpose of engaging in predicate acts violating RICO, but the enterprise also engaged in the legitimate provision of physical therapy services.  The enterprise developed forms, billing practices, and marketing campaigns for legitimate billing practices and enabled the distribution of income from these legitimate transactions to the various Defendants.

### FACTS APPLICABLE TO PLAINTIFFS

#### D.     PLAINTIFF STANLEY MORSBERGER

74.     Beginning on or around February 6, 2019, Plaintiff Morsberger started treatment at an ATI Physical Therapy facility located at 117 Orville Road, Baltimore, MD 21221 for low back and neck pain as a result of an auto accident.  His treatment at ATI Physical Therapy continued through his discharge on March 7, 2019.

75.     During all times relevant to his treatment, Plaintiff Morsberger was insured by Aetna – MD, which covered his medical treatment, including, but not limited to, physical therapy services.

76.     At all times relevant to Mr. Morsberger's treatment, ATI Physical Therapy had and maintained an agreement with Aetna – MD providing that ATI Physical Therapy would submit any Aetna – MD insureds' claims to Aetna – MD for claims processing, and provided that if ATI Physical Therapy failed to do so, ATI Physical Therapy would be prohibited from collecting any payment for its services from the Aetna – MD insured.

77.     In addition, at all times relevant to Mr. Morsberger's treatment, ATI Physical Therapy's web site and new patient intake forms unequivocally represented and guaranteed that ATI Physical Therapy would submit Plaintiff Morsberger's claims to his insurer for claims processing.  Nothing on ATI Physical Therapy's web site, advertisements, or new patient intake

forms disclosed or revealed that if Plaintiff Morsberger's injuries were subject to a lawsuit that ATI Physical Therapy would not submit those claims to Plaintiff Morsberger's insurer.

78.     On January 30, 2019, Plaintiff Morsberger was referred to ATI Physical Therapy by his primary care physician.  In making that referral, his primary care physician used a form titled "Maryland Uniform Consultation Referral Form."  That form provided Defendants with Plaintiff Morsberger's health insurance information.

79.     Defendants knew or had reason to know that Mr. Morsberger's treatment resulted from injuries sustained during a personal injury accident.

80.     As indicated by completed, but not submitted, insurance claims forms in his ATI Physical Therapy medical records and a copy of his insurance card contained in his ATI Physical Therapy medical records, during his intake as a patient of ATI Physical Therapy, Plaintiff Morsberger provided ATI Physical Therapy with his health insurance information.  Upon learning that Plaintiff Morsberger's injuries may have been caused by the fault of a third party, ATI Physical Therapy never submitted those claims to his insurer for reimbursement.

81.     Additionally evidencing ATI Physical Therapy's promise to Plaintiff Morsberger to submit his claims to insurance, ATI Physical Therapy provided him with one of ATI Physical Therapy's standard forms, a Notice of Financial Responsibility, and required him to sign it.  That statement confirmed that ATI Physical Therapy both recorded Plaintiff Morsberger's insurance information and provided the insurance verification promised by ATI Physical Therapy in its advertisements, confirming that he would be covered by Aetna – MD with only $970.58 remaining on his deductible and 10% co-insurance.  The Notice of Financial Responsibility contained all of the information ATI Physical Therapy needed to submit Mr. Morsberger's claims to his health insurer.  The Notice of Financial Responsibility advised that Plaintiff Morsberger would be

responsible, only for "payment of any deductible, copayment, and co-insurances determined by [his] policy." On or around June 19, 2019, ATI Physical Therapy using the U.S. mails and/or by wire transmission sent Mr. Morsberger's attorney an invoice of ledger report ("Mr. Morsberger's Final Bill") showing ATI Physical Therapy's consumer services in the amount of $6,945.97 for the full rack-rate costs of its physical therapy services.

82.     Because Defendants, *inter alia*, collected Mr. Morsberger's health insurance information and promised in their patient intake forms and advertisements that they would submit his claims to his health insurer, Mr. Morsberger's Final Bill for his physical therapy implicitly and falsely represented to Mr. Morsberger that ATI Physical Therapy had attempted to submit the charges to Mr. Morsberger's insurer, when they did not.  Mr. Morsberger's Final Bill also explicitly and falsely represented that Mr. Morsberger owed $6,945.97 to ATI Physical Therapy, knowing that (a) had ATI Physical Therapy actually submitted Mr. Morsberger's claims to Aetna – MD, Aetna's allowable charges (and thus ATI Physical Therapy's payment) would have been far less and (b) that because Defendants failed to submit Mr. Morsberger's claims to insurance, they were contractually prohibited from collecting payment from Mr. Morsberger at all.

83.     Because Defendants failed to bill Plaintiff Morsberger's health insurer, Defendants were prohibited by contract from billing him for any amount for services rendered.  Even if Defendants had submitted Plaintiff Morsberger's claims to his health insurer, they would have been prohibited from billing him any amount in excess of the insurance negotiated rate.

84.     On or around September 11, 2020, Plaintiff Morsberger's personal injury action was resolved.  Contemporaneous with the resolution of Mr. Morsberger's personal injury action, ATI was paid $4,000.00 for the physical therapy services provided by ATI Physical Therapy to Mr. Morsberger between February 6, 2019 and March 7, 2019.  This amount, which was paid from

settlement funds that otherwise belonged to Mr. Morsberger, was substantially in excess of that which he would have paid absent ATI Physical Therapy's fraudulent, unfair, abusive, unlawful, and deceptive practices.

85.    In reliance upon ATI Physical Therapy's representation that Mr. Morsberger owed at least $4,000.00 to ATI Physical Therapy for its physical therapy services provided by ATI to Mr. Morsberger, on or about September 24, 2020, Mr. Morsberger's attorney sent ATI Physical Therapy a check for $4,000.00.  ATI Physical Therapy cashed that check on or about October 6, 2020.

### E.    PLAINTIFF CLEMENTINE ELUH

86.    Beginning on or around March 14, 2018, Plaintiff Eluh started treatment an ATI Physical Therapy facility located at 192-D Halpine Road, Rockville, Maryland 20852-7645 for left knee and lower back pain.  Her treatment at ATI Physical Therapy continued through her discharge on August 6, 2018.

87.    During all times relevant to her treatment, Plaintiff Eluh was insured by Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), a subsidiary of Kaiser Permanente

88.    At all times relevant to Ms. Eluh's treatment, ATI Physical Therapy had and maintained an agreement with Kaiser providing that ATI Physical Therapy would submit any Kaiser insureds' claims to Kaiser for claims processing, and, if ATI Physical Therapy failed to do so, it would be prohibited from collecting any payment for its services from the Kaiser insured.

89.    In addition, at all times relevant to Ms. Eluh's treatment, ATI Physical Therapy's web site and new patient intake forms unequivocally represented and guaranteed that ATI Physical Therapy would submit Plaintiff Eluh's claims to her insurer for claims processing.  Nothing on ATI Physical Therapy's web site, advertisements, or new patient intake forms disclosed or

revealed that if Plaintiff Eluh's injuries were subject to a lawsuit that Defendants would not submit those claims to Plaintiff Eluh's insurer.

90.     During her telephone intake as a patient of ATI Physical Therapy, Plaintiff Eluh provided ATI Physical Therapy with her health insurance information.

91.     ATI Physical Therapy knew or had reason to know that Ms. Eluh's treatment resulted from injuries sustained during a personal injury accident.

92.     ATI Physical Therapy provided Plaintiff Eluh with one of ATI Physical Therapy's standard forms, a Notice of Financial Responsibility, and required her to sign it.  The Notice of Financial Responsibility advised that Plaintiff Eluh would be responsible, only for "payment of any deductible, copayment, and coinsurances determined by [her] policy."

93.     On April 13, 2019, ATI Physical Therapy using the U.S. mails and/or wire transmission sent Ms. Eluh a final bill for its consumer services in the amount of $9,091.64 ("Ms. Eluh's Final Bill").

94.     Because Defendants, *inter alia*, collected Ms. Eluh's health insurance information and promised in their client intake forms and advertisements that they would submit her claims to her health insurer, Ms. Eluh's Final Bill for her physical therapy implicitly and falsely represented to Ms. Eluh that Defendants had attempted to submit the charges to Ms. Eluh's insurer, when they did not.  Ms. Eluh's Final Bill also explicitly and falsely  represented that Ms. Eluh owed $9,091.64 to ATI Physical Therapy, knowing that (a) had Defendants actually submitted Ms. Eluh's claims to Kaiser, Kaiser's allowable charges (and thus ATI Physical Therapy's payment) would have been far less and (b) that because Defendants failed to submit Ms. Eluh's claims to insurance, they were contractually prohibited from collecting payment from Ms. Eluh at all.

95.     On or around July 2019, Plaintiff Eluh's personal injury action was resolved. Contemporaneous with the resolution of Ms. Eluh's personal injury action, Ms. Eluh paid ATI Physical Therapy $5,454.98 for her physical therapy services provided between March 14, 2018 and August 6, 2018.

96.     This amount, which was paid from settlement funds that otherwise belonged to Ms. Eluh was substantially in excess of that which she would have paid absent Defendants' fraudulent, unfair, abusive, unlawful, and deceptive practices.

97.     In reliance upon Defendants' representation that Ms. Eluh owed at least $5,454.98 to ATI Physical Therapy for the physical therapy services provided to Ms. Eluh, on or about July 15, 2019, Ms. Eluh's attorney sent ATI Physical Therapy a check for $5,454.98. ATI Physical Therapy cashed that check.

## CLASS ACTION ALLEGATIONS

98.     Plaintiffs bring this action on their own behalf, and on a behalf of a nationwide class pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3).

The Nationwide Class:

All persons who, during the timeframe of this Complaint: (a) sought and obtained physical therapy or other related services from Defendants; (b) who had health insurance; but (c) were billed in excess of their insurance-negotiated rates for physical therapy services (the "Nationwide Class").

99.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(e), Plaintiffs seek to represent the following state subclass, only in the event that the Court declines to certify the Nationwide Class above. The state subclass consists of the following:

The Maryland Class:

All persons who, during the timeframe of this Complaint: (a) sought and obtained physical therapy or other related services from Defendants within the State of

30

Maryland; (b) who had health insurance; but (c) were billed in excess of their insurance-negotiated rates for physical therapy services (the "Maryland Class").

100.    The Nationwide Class and the Maryland Class shall be collectively referred to herein as the "Class." Excluded from the Class are Defendants, their affiliates, employees, officers and directors, the Judge(s) assigned to this case, and the spouses, parents, siblings, and children of all such individuals. Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

101.    This Complaint covers the time period up to the resolution of this case. The statutes of limitations under each cause of action asserted herein are inapplicable to the Class members' claims based on the acts of omission and wrongful conduct by Defendants, as set forth herein, which equitably tolled the limitations period(s) under the circumstances described herein.

102.    Plaintiffs and Class members, despite the exercise of due diligence, and due to their reliance on the accuracy and truthfulness of documents provided by Defendants, did not and could not have discerned their causes of action against Defendants due to Defendants' fraudulent concealment of the illegal billing scheme that was perpetrated against Plaintiffs and the Class.

103.    Plaintiffs and Class members failed to discover the facts that are the basis for their claims because Defendants' advertisements, brochures, promotions, marketing materials, statements, client intake forms, and/or client agreements mislead Plaintiffs and Class members into believing Defendants would submit their claims to their insurance companies, and they would pay no more than the insurance negotiated rates for their care, creating a false sense that Defendants would submit charges to Plaintiffs and Class members' primary and subsequent insurance companies when unbeknownst to Plaintiffs and the Class, when Defendants learn that a third party may have liability for medical bills, they fail to process the cost of treatment through any health or other insurer.

31

104. Plaintiffs and Class members failed to discover the facts that are the basis for their claims because Defendants submitted bills to Plaintiffs and Class members and/or attached liens to their recoveries from third parties for amounts in excess of that which they were entitled to recover from Plaintiffs and Class members, without disclosing to Plaintiffs and Class members that Defendants were prohibited from seeking the billed amount from Plaintiffs and Class members.

105. Plaintiffs and the Class members were not aware of any facts that should have provoked their inquiry.

106. The Class, as set forth herein, is identifiable. Plaintiffs are Class members.

107. On information and belief, the Class consists of hundreds, if not thousands, of individuals, and thus is so numerous that joinder of all members is impracticable.

108. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual Class members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that there are at least thousands of Class members.

109. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all Class members. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to whether:

      a. Defendants failed to provide clear and conspicuous notice in writing to patients who have health insurance, that Defendants would refuse to submit

claims to Plaintiffs' and Class members' insurers for physical therapy services without regard to the person's health insurance;

b. Defendants affirmatively concealed from their patients who have health insurance that, when Defendants identify potential third-party liability, Defendants would bill the rack-rate costs of service for physical therapy services without regard to the person's health insurance;

c. The Subsidiary Defendants and Management Defendants conspired together to conceal and misrepresent in a systematic and uniform way that, when Defendants identify potential third-party liability, patients who have health insurance Defendants billed Plaintiffs and Class members' Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance;

d. The Subsidiary Defendants and Management Defendants conspired together to develop and use form documents geared to conceal that, when Defendants identify potential third-party liability, Defendants would bill Plaintiffs and Class members who have health insurance Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance;

e. The Subsidiary Defendants and Management Defendants engaged in a pattern of "racketeering activity" as defined by § 1961(5) of 18 U.S.C. § 1961 *et seq.*;

f. Defendants are liable to Plaintiffs and Class members for damages resulting from their pattern of billing patients Defendants' rack-rate costs of service

for physical therapy services without regard to the person's health insurance without disclosing this information to their patients;

g.      Defendants had knowledge that they were billing patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance;

h.      Declaratory and injunctive relief is proper to prevent Defendants from continuing to bill patients who have health insurance Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance;

i.      Defendants' failure to disclose that Defendants would bill patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance was an unfair and deceptive trade practice;

j.      Defendants' affirmative concealment that Defendants would bill patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance following a personal injury or other accident was an unfair and deceptive trade practice;

k.      Defendants negligently failed to disclose to Plaintiffs and Class members that they would bill patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance; and

l.     The statutes of limitations applicable to each of the causes of action asserted herein have been equitably tolled by Defendants' wrongful or fraudulent concealment, despite due diligence of Plaintiffs and Class members.

110.   Typicality: All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs sought treatment from Defendants and were improperly and unlawfully billed for those services, as did each Class member. Furthermore, Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

111.   Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex consumer and class action litigation, and they intend to prosecute this action vigorously, and foresee little difficulty in the management of this case as a class action. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

112.   Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Class members individually to redress effectively the wrongs done to them. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system,

presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Class members can be readily identified and notified based on, *inter alia*, Defendants' billing and patient records.

113.    Defendants have acted, and refused to act, on grounds generally applicable to the Class as a whole, and Plaintiffs seek equitable remedies with respect to the Class as a whole, thereby making appropriate final relief with respect to the Class as a whole.

## **ILLINOIS LAW APPLIES TO STATE LAW CLAIMS**

114.    It is appropriate to apply Illinois law to the state law claims of the Class, because Illinois's interest in this litigation exceeds that of any other state.

115.    ATI Holdings LLC and Athletic & Therapeutic Institute of Naperville, LLC are organized under the laws of the State of Illinois and with ATI Physical Therapy, Inc. are headquartered in Bolingbrook, Illinois.

116.    Upon information and belief, the large majority of the Management Defendants, who set the uniform policies, created the uniform advertisements, and directed the misconduct alleged herein, are located within the State of Illinois.

117.    Defendants' bills are issued from the various Subsidiary Defendants, but direct payment to ATI Physical Therapy's offices located at 4947 Paysphere Circle, Chicago, Illinois 60674-4947.

118.    Because the challenged conduct relates to fraudulent billing and collection and misleading advertisement, all of which originates from the State of Illinois, it is appropriate to apply Illinois law to the state law claims at issue herein.

**COUNT I**
**(VIOLATION OF RICO – 18 U.S.C. § 1962(c))**
**(AGAINST THE SUBSIDIARY DEFENDANTS**
**AND MANAGEMENT DEFENDANTS)**

119.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

120.     Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

121.     Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" are each a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(a).

122.     ATI Physical Therapy is an ongoing "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

123.     Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" have knowingly conducted and/or participated, directly or indirectly, in the conduct of ATI Physical Therapy's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341 and the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the United States mails and wires to submit or cause to be submitted and collect payment for fraudulent bills seeking payment for services that ATI Physical Therapy was not eligible to receive pursuant to its contractual obligations with health insurers and representations to Plaintiffs and Class members. The chart at paragraph 66 *supra* is a summary of a sample of some of the fraudulent bills that have been identified to-date that the Defendants submitted, or caused to be submitted, to Named Plaintiffs and Class members.

124. The predicate acts of mail fraud are the regular way in which Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" operate ATI Physical Therapy, insofar as ATI Physical Therapy never has been eligible to bill for or collect rack-rate payment for its physical therapy services as to Plaintiffs and Class members, and acts of mail and wire fraud therefore are essential in order for ATI Physical Therapy to function. Furthermore, the intricate planning required to carry out the predicate acts of mail fraud implies a threat of continued criminal activity.

125. Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" continue to submit and attempt collection on the fraudulent billing.

126. Plaintiffs and Class members have been injured in their property by reason of the above-described conduct in that they have paid more than they should have paid pursuant to the fraudulent bills submitted by Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" through ATI Physical Therapy.

127. As a result of the foregoing, Named Plaintiffs and Class members seek treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**COUNT II**
**(VIOLATION OF RICO – 18 U.S.C. § 1962(d)**
**(AGAINST THE SUBSIDIARY DEFENDANTS**
**AND MANAGEMENT DEFENDANTS)**

128. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

129. Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

130. Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40," and "John Does "1" through "10" are each a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(a).

131. ATI Physical Therapy is an ongoing "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

132. Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40" and John Does "1" through "10" have been employed by and/or associated at all relevant times with the "ATI Physical Therapy Enterprise."

133. Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40" and John Does "1" through "10" have knowingly agreed to and conspired to conduct and/or participate, directly or indirectly, in the conduct of the ATI Physical Therapy Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, and the federal wire fraud statute, 18 U.S.C. § 1343, based upon the use of the United States mails to submit to Plaintiffs and Class members thousands of fraudulent bills for which ATI Physical Therapy was not entitled to receive payment under its contracts with providers, representations to patients, and state law rights to insurance.

134. Plaintiffs and Class members have been injured in their business and property by reason of the above-described conduct of Ray Wahl, ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, Jane Does "1" through "40" and John Does "1" through "10" in that

they have paid at a minimum, tens of millions of dollars pursuant to the fraudulent bills submitted by the Defendants through ATI Physical Therapy.

135.    By reason of their injury, Plaintiffs and Class members are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

136.    As a result of the foregoing, Named Plaintiffs and Class members seek treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(d), and any other relief the Court deems just and proper.

**COUNT III**
**(VIOLATION OF RICO – 18 U.S.C. § 1962(a)**
**(AGAINST DEFENDANTS)**

137.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

138.    Plaintiffs and each Class member are "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

139.    Each Defendant is a "person" within the meaning of 18 U.S.C. § 1961(3) and 18 U.S.C. § 1962(a).

140.    ATI Physical Therapy, Inc. is an ongoing "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in, and the activities of which affect, interstate commerce.

141.    Each of the Defendants used proceeds derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to acquire an interest in, establish, and operate the enterprise.

142.    These unlawful activities included multiple instances of interstate transport of money converted or fraudulently obtained, which occurred uniformly and consistently throughout the duration of the enterprise and permitted Defendants to maintain and operate this enterprise.

143.    One of the purposes of the enterprise was to pool resources and expertise to falsely advertise and fraudulently bill for physical therapy services, allowing Defendants to establish a common methodology and scheme for engaging in these practices, using form documents developed for use by the enterprise, and to illegally profit from this scheme at the expense of Plaintiffs and Class members.

144.    This enterprise had a common or shared purpose—to give effect to the fraudulent billing scheme described herein, and to allow Defendants to use form documents and process to conduct these practices.

145.    The enterprise had a distinct division of labor, and each Defendant played a substantial and distinct role in the scheme.  In particular, *inter alia*, (a) the Management Defendants would direct the operation of the enterprise; (b) the Subsidiary Defendants refuse to submit Plaintiffs' and Class members' claims to their insurance providers, and send fraudulent bills to patients; and (c) ATI Physical Therapy, Inc. collects fraudulent payments and places fraudulent liens on third-party payor recoveries.

146.    Further, each Subsidiary Defendant agreed to promote and advertise itself as one of an affiliated group of companies operating under the banner "ATI Physical Therapy" and not under their names of incorporation.

147.    Upon information and belief, the Subsidiary Defendants agreed that they would subject themselves to oversight by a group of persons responsible for the management of ATI Physical Therapy—the Management Defendants.

148.    Upon information and belief, Defendants agreed that their billing practices and marketing campaigns would be governed by general guidelines developed through their ATI Physical Therapy association.

149.    Defendants created and disseminated for use, and agreed to use and used in their operations, form documents, practices, and procedures to bill patients who sought physical therapy services following an injury as to which a third-party may have been liable.

150.    These form documents, practices, and procedures did not comport with state law and were prohibited pursuant to Defendants' provider contracts with insurers, Medicare, and Medicaid, as to which, Plaintiffs and Class members were the intended beneficiaries with regard to the relevant provisions at issue in this Complaint.

151.    The form documents, practices, and procedures were designed to, and did, deceive consumers into paying more than they owed for their physical therapy services.

152.    Defendants provided each Plaintiff and Class member with form documents that contained fraudulent and false statements and/or omissions and that concealed material facts, which caused Plaintiffs and Class members to act in reasonable reliance on these deceptive documents and to believe that: (a) ATI Physical Therapy was a legitimate enterprise and was proceeding legitimately, and (b) that Defendants would only bill them for amounts for which they were responsible under their health insurance plans.

153.    All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to each Plaintiff and Class member. Defendants' illegal activities persisted over an extended period of time.

154. Each agreement, advertisement, and bill provided to each Plaintiff and Class member in the course of their physical therapy was provided in furtherance of the conspiracy described herein, for which Defendants are liable.

155. The reliance of Named Plaintiffs and Class members on the material omissions and falsehoods contained in such documents and other communications was reasonable and justified because such documents and communications would and did cause persons of ordinary experience to be convinced of the legality and legitimacy of the operations of ATI Physical Therapy.

156. The activities of the Defendants as described herein entailed multiple instances of mail fraud, consisting of intentional mail fraud intended to induce, and inducing, Named Plaintiffs and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1341.

157. These activities of the Defendants also entailed multiple instances of wire fraud, consisting of intentional wire fraud intended to induce, and inducing, Named Plaintiffs and the Class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1343.

158. These activities of the Defendants also entailed multiple instances of interstate transport of money converted or fraudulently obtained, in violation of 18 U.S.C. § 2314. Through the use of this illegal and fraudulent scheme, and through their efforts to operate and maintain the enterprise described herein and to facilitate the fraudulent billing scheme alleged herein, Defendants have been able to retain money that is rightfully owed to Plaintiffs and Class members, and to collect money not properly due from Plaintiffs and Class members.

159. Defendants have retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).

160. Furthermore, Defendants each previously acquired illicit funds through similar fraudulent operations involving mail and wire fraud and interstate transport of money converted

or fraudulently obtained, and they used these proceeds to continue their scheme by investing in and operating ATI Physical Therapy.

161.    Through Defendants' use of the illegal and fraudulent scheme of submitting fraudulent bills for services rendered to Plaintiffs and Class members and collecting illegally gained funds, and through their efforts to operate and maintain the enterprise described herein to facilitate the fraudulent billing and collection of funds from Plaintiffs and Class members of moneys not owed to them, Defendants have been able both to maintain the enterprise and to profit from it at the expense of Plaintiffs and Class members.

162.    Named Plaintiffs and Class members have been injured in their property by reason of the violations of § 1962(a), because Plaintiffs and Class members were overcharged for their physical therapy from Defendants as a result of the reinvestment and use of funds by Defendants derived from Defendants' pattern of racketeering activity to fund and operate ATI Physical Therapy and facilitate and incentivize the Defendants' actions in deceptively collecting funds to which they were contractually and otherwise barred from collecting.

163.    As a result of the foregoing, Plaintiffs and Class members seek treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(a), and any other relief the Court deems just and proper.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**
**UNDER 28 U.S.C. § 2201**
**(ON BEHALF OF THE NATIONWIDE AND MARYLAND CLASSES**
**AGAINST THE DEFENDANTS)**

164.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

165.    This claim for declaratory relief is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* ("Declaratory Judgment Act"), to settle and obtain relief from Defendants' illegal and fraudulent practice of billing patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's insurance following a personal injury or another accident.

166.    This claim for declaratory relief is also brought under the Declaratory Judgment Act to settle and obtain relief from uncertainty and insecurity with respect to the provider contracts between Defendants and the various private and governmental health insurers, of which Plaintiffs and Class members are third-party beneficiaries of these health insurance contracts.

167.    Section 2201(a) of the Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

168.    Section 2202 of the Declaratory Judgment Act provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

169.    Defendants maintain they may bill ATI Physical Therapy's patients who have health insurance following a personal injury or other accident rack-rate costs of service for physical therapy services without regard to the person's health insurance.

170.    Upon information and belief, there is an actual, judicable controversy between the parties relating to whether Defendants may bill ATI Physical Therapy's patients who have insurance following a personal injury or other accident rack-rate costs of service for physical therapy services without regard to the person's health insurance.

171.    These practices continue and will continue unless and until this Court declares and affirms that Defendants may not bill ATI Physical Therapy's patients who have insurance following a personal injury or other accident rack-rate costs of service for physical therapy services without regard to the person's health insurance.

172.    This presents and actual, judicable controversy between the parties relating to Defendants' billing patients who have insurance following a personal injury or other accident rack-rate costs of service for physical therapy services without regard to the person's health insurance because Defendants have collected or likely will continue to collect more from ATI Physical Therapy patients who have insurance following a personal injury of other accident than they should have paid had Defendants billed the Subsidiary Defendants' physical therapy services through the patients' health insurance.

173.    Defendants maintain that they are not precluded by contract with health insurance carriers from seeking payment for the Subsidiary Defendants' services above the contractual allowances from the insured patient.

174.    Defendants further maintain that they are not precluded by contract with the health insurance carriers from attempting to collect from a covered patient if ATI Physical Therapy failed to submit physical therapy bills for payment to the patient's insurer within the time provided by the physical therapy provider contract between Defendants and the insurer.

175.    Plaintiffs and Class members have a right to be free from Defendants' illegal and improper billing practices, as descried herein.

176.    The benefits to Plaintiffs and Class members in obtaining an injunction outweigh any potential harm Defendants would incur as a result of an injunction, under the balance of convenience test, as Defendants have no legal or contractual right to bill and collect from Plaintiffs and Class members Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance following a personal injury or other accident, and Plaintiffs and Class members would greatly benefit from being relieved of Defendants' attempt to do so.

177.    Plaintiffs and Class members will suffer irreparable injury unless the requested injunctions are granted, as Defendants will continue to bill ATI Physical Therapy's patients who have health insurance following a personal injury or other accident rack-rate costs of service for physical therapy services without regard to the person's health insurance in violation of the law.

178.    The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing Defendants from violating the statutory and common law of the State of Maryland in its billing and/or collection practices, and a compelling interest in seeing the laws of the State of Maryland obeyed.

179.    As a result of the foregoing, Plaintiffs, on behalf of themselves and the Nationwide Class, seek (a) a declaratory judgment declaring that Defendants were required to submit Plaintiffs claims to their insurers or government-sponsored health plans; (b) a declaratory judgment declaring that Defendants are required to accept as payment in full the contractual allowances for the insured patient's physical therapy treatment; (c) a declaratory judgment declaring that Defendants are required to hold insured patients, like Plaintiffs and Class members harmless if Defendants fail or failed to submit their claims to their health insurers;  (d) an order granting

Named Plaintiff and members of the Class a preliminary and permanent injunction prohibiting Defendants from failing to submit Plaintiffs' and Class members' claims to their health insurers; (e) an order granting Named Plaintiff and members of the Class a preliminary and permanent injunction prohibiting Defendants from billing or attempting to bill and collecting or attempting to collect from Plaintiffs and Class members Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance.

**COUNT V:**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE PRACTICES ACT,**
**815 ILL. CODE ANN. § 505**
**(ON BEHALF OF THE NATIONWIDE CLASS AGAINST THE DEFENDANTS)**

180.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

181.    Plaintiffs and Nationwide Class members are consumers as defined under the Illinois Consumer Fraud and Deceptive Practices Act (the "CFDPA") who suffered actual harm as a result of the Subsidiary Defendants' and ATI Physical Therapy, Inc.'s (together, referred to in this Count as "Defendants") unfair and deceptive trade practices. 815 Ill. Comp. Stat. Ann. § 505/1.

182.    Defendants advertise, offer, and sell consumer services as defined under the CFDPA.

183.    Plaintiffs' and the Nationwide Class members' claims relate specifically to the billing practices, advertisements, and commercial aspects of Defendants' business and expressly exclude any claims relating to Defendants' provision of professional services to Plaintiffs or the Nationwide Class. *See, e.g.*, *Gadson v. Newman*, 807 F. Supp. 1412, 1415-21 (C.D. Ill. 1992).

184.    Under the CFDPA, "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false promise, misrepresentation or the

48

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. Ann. 505/2.

185.    Unfair or deceptive trade practices include making false or misleading statements or representations, i.e. that Defendants will submit claims to insurance prior to billing the customer; representing that services, i.e. Defendants' billing practices, have characteristics or benefits that they do not have; failing to state that Defendants will engage in illegal, deceptive, unfair, fraudulent, and abusive billing practices and charge a different price than would have been charged had Defendants billed patient insurance; and failing to state a material fact if doing so deceives or tends to deceive.

186.    By marketing, promoting, advertising and/or billing for consumer services without disclosing all material information regarding Defendants billing practices and illegal, deceptive, unfair, fraudulent, and abusive billing procedures, Defendants have willfully engaged in unfair or deceptive trade practices and unconscionable trade practices in violation of the CFDPA.

187.    By willfully billing Plaintiffs and the Nationwide Class more than they would have owed, and Defendants would have been owed, had Defendants submitted Plaintiffs' and the Nationwide Class members' claims to their insurance providers, Defendants violated the CFDPA.

188.    By collecting information concerning potential tortfeasors in connection with Plaintiffs' and the Nationwide Class members' injuries, while failing to disclose that Defendants would use that information to inflate Plaintiffs' and the Nationwide Class members' bills, Defendants violated the CFDPA.

189.    Defendants made, orally, visually, and in writing, unfair or deceptive representations in advertisements, promotions, marketing materials, statements, intake forms, and patient agreements to Plaintiffs and Nationwide Class members regarding their billing practices in the regular course of their business in violation of the CFDPA.

190.    Defendants intended that Plaintiffs and the Nationwide Class members rely on those unfair or deceptive representations in an effort to induce them to seek care from ATI Physical Therapy, demonstrated, in part, by Defendants' prominent advertisements about its services' wide coverage under a variety of health insurance plans.

191.    Defendants' unfair or deceptive and/or unconscionable representations in advertisements, brochures, promotions, marketing materials, statements, client intake forms, and/or client agreements misled Plaintiffs and Nationwide Class members into believing Defendants would submit their claims to their insurance companies, and they would pay no more than the insurance negotiated rates for their care.

192.    Defendants' practices were "unfair" in violation of the CFDPA not only because of their deceptive statements and omissions, but also because those practices are unethical, oppressive, or unscrupulous, and because they caused substantial injury to consumers.

193.    Had Defendants adequately disclosed their billing practices, Plaintiffs and Nationwide Class members would not have sought treatment from ATI Physical Therapy.

194.    The injuries caused by Defendants' practices alleged in this Complaint were substantial and were not outweighed by any countervailing benefits to consumers or competition that the practice produces.

195.    Defendants' practices alleged in this Complaint were injurious in their net effect to consumers.

196.     As a result of Defendants' unfair and deceptive trade practices in violation of the CFDPA, Plaintiffs and the Nationwide Class who had health insurance were billed Defendants' rack-rate costs of service for physical therapy services, without regard to the person's health insurance, following a personal injury or other accident, and thus they paid more for Defendants' services than they would have paid had Defendants submitted the bills for their physical therapy services through the patients' health insurance.

197.     As a result of the foregoing, Plaintiffs, on behalf of themselves and the Nationwide Class, seek all available relief, including actual damages in an amount equal to the cost they paid over what the patient would have paid through their health insurance coverage, injunctive relief, pre-judgment interest, attorneys' fees and costs, for Defendants' violations of the CFDPA.

## COUNT VI:
## VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT, MARYLAND CODE, COM. LAW, TITLE 13
## (ON BEHALF OF THE MARYLAND CLASS AGAINST THE DEFENDANTS)

198.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

199.     Plaintiffs and Maryland Class members are consumers as defined under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101(c) who suffered actual harm as a result of the Subsidiary Defendants' and ATI Physical Therapy, Inc.'s (together, referred to in this Count as "Defendants") unfair and deceptive trade practices.

200.     Defendants are each merchants of consumer services and consumer credit within the meaning of the MCPA § 13-101(g), and are subject to all MCPA provisions prohibiting unfair and deceptive trade practices, including those in Md. Code Ann., Com. Law §§ 13-303 and 13-301.

201. Plaintiffs' and the Maryland Class members' claims relate specifically to the billing practices, advertisements, and commercial aspects of Defendants' business and expressly exclude any claims relating to Defendants' provision of professional services to Plaintiffs or the Maryland Class. *See, e.g.*, *Scull v. Groover, Christie & Merritt, P.C.*, 435 Md. 112, 76 A.3d 1186 (2013).

202. Under the MCPA, "[a] person may not engage in any unfair, abusive, or deceptive trade practice . . . in [t]he sale . . . of any consumer goods . . . or consumer services; [t]he offer for sale … of consumer goods . . . or services; . . . [or] the collection of consumer debts." Md. Code Ann., Com. Law § 13-303(1)-(2), (5).

203. An "unfair or deceptive trade practice" includes, *inter alia*, "any . . . [f]alse . . . or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," (*id.* § 13-301(1)); as well as any "[r]epresentation that . . . consumer services . . . have a . . . characteristic . . . [or] benefit . . . which they do not have" (*id.* § 13-301(2)(i)); any "[f]ailure to state a material fact if the failure deceives or tends to deceive" (*id.* § 13-301(3)); and any "[d]eception . . . , misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with . . . [t]he promotion or sale of any . . . consumer service." (*id.* § 13-301(9)(i)).

204. Unfair or deceptive trade practices include making false or misleading statements or representations, i.e. that Defendants will submit claims to insurance prior to billing the customer; representing that services, i.e. Defendants' billing practices, have characteristics or benefits that they do not have; failing to state that Defendants will engage in illegal, deceptive, unfair, fraudulent, and abusive billing practices and charge a different price than would have been

charged had Defendants billed patient insurance; and failing to state a material fact if doing so deceives or tends to deceive.  Md. Code Ann., Com. Law § 13-301(2)(i); *id.* § 13-301(3).

205.    By marketing, promoting, advertising and/or billing for consumer services without disclosing all material information regarding Defendants' billing practices and illegal, deceptive, unfair, fraudulent, and abusive billing procedures, Defendants have willfully engaged in unfair or deceptive trade practices and unconscionable trade practices in violation of the Maryland Consumer Protection Act.

206.    By willfully billing Plaintiffs and the Maryland Class more than they would have owed, and Defendants would have been owed, had Defendants submitted Plaintiffs' and the Maryland Class members' claims to their insurance providers, Defendants violated the Maryland Consumer Protection Act.

207.    By collecting information concerning potential tortfeasors in connection with Plaintiffs' and the Maryland Class members' injuries, while failing to disclose that Defendants would use that information to inflate Plaintiffs' and the Maryland Class members' bills, Defendants violated the Maryland Consumer Protection Act.

208.    Defendants made, orally, visually, and in writing, unfair or deceptive representations in advertisements, promotions, marketing materials, statements, intake forms, and patient agreements to Plaintiffs and Maryland Class members regarding their billing practices in the regular course of their business in violation of Md. Code Ann., Com. Law § 13-301(2)(i).

209.    Defendants' unfair or deceptive and/or unconscionable representations in advertisements, brochures, promotions, marketing materials, statements, client intake forms, and/or client agreements are of the type that tended to deceive and/or mislead Plaintiffs and

Maryland Class members into believing Defendants would submit their claims to their insurance companies.

210.    Defendants' practices were "unfair" in violation of the MCPA not only because of their deceptive statements and omissions, but also because those practices are unethical, oppressive, or unscrupulous, and because they caused substantial injury to consumers.

211.    Defendants' practices were also "unfair" as they were unlawful in that they violated the Md. Code Ann., Com. Law § 14-2902 prohibition against false and misleading advertisement of services.

212.    Had Defendants adequately disclosed their billing practices, Plaintiffs and Maryland Class members would not have sought treatment from ATI Physical Therapy.  The injuries caused by Defendants' practices alleged in this Complaint were substantial and were not outweighed by any countervailing benefits to consumers or competition that the practice produces.

213.    Defendants' practices alleged in this Complaint were injurious in their net effect to consumers.

214.    As a result of Defendants' unfair and deceptive trade practices in violation of the MCPA, Plaintiffs and the Nationwide Class who had health insurance were billed Defendants' rack-rate costs of service for physical therapy services, without regard to the person's health insurance, following a personal injury or other accident, and thus they paid more for Defendants' services than they would have paid had Defendants billed their physical therapy services through the patients' health insurance.

215.    As a result of the foregoing, Plaintiffs, on behalf of themselves and the Maryland Class, seek all available relief, including actual damages in an amount equal to the cost they paid

over what the patient would have paid through their health insurance coverage, injunctive relief, pre-judgement interest, attorneys' fees, for Defendants' violations of the MCPA.

**COUNT VII**
**UNJUST ENRICHMENT**
**(ON BEHALF OF THE NATIONWIDE CLASS, OR, IN THE**
**ALTERNATIVE, THE MARYLAND CLASS,**
**AGAINST ALL DEFENDANTS)**

216. Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

217. Plaintiffs and Nationwide Class members conferred a benefit on Defendants by paying higher than insurance negotiated rates for their physical therapy.

218. Defendants knew or should have known that they were billing for collecting payment at rates higher than insurance negotiated rates, because they collected insurance information from Plaintiffs and members of the Nationwide Class and regularly bill insurance companies for non-accident patients in the ordinary course of business.

219. Defendants were unjustly enriched by billing and collecting payment at rates higher than the knew to be owed.

220. Defendants' retention of payment in excess of what they were owed was unjustified and violates fundamental principles of justice, equity, and good conscience.

221. As a result of the foregoing, Plaintiffs and the Nationwide Class are entitled to restitution, including, but not limited to, disgorgement of profits, as a result of Defendants' unjust enrichment.

**COUNT VIII**
**MONEY HAD AND RECEIVED**

**(ON BEHALF OF THE MARYLAND CLASS
AGAINST ALL DEFENDANTS)**

222.     Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 118 of this Complaint, and all other Counts plead herein, as if fully set forth herein.

223.     As described above, following a personal injury or other accident, Defendants deceptively billed their patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance, which conferred a substantial benefit on each Defendant.

224.     By doing so, Defendants have come into the possession of money that they had, and have, no right to at law, or in equity.

225.     Defendants reached an agreement or understanding to bill their patients Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance, and they worked in combination with each other and performed the overt acts described herein to facilitate and engage in a conspiracy to do so.

226.     Defendants obtained possession of money belonging to Plaintiffs and Class members by concealing from, failing to disclose and/or misrepresenting to Plaintiffs and Class members that Defendants billed their patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance.

227.     Because Defendants misrepresented and concealed that they billed patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance, Plaintiffs and the Class paid more for Defendants' services than they would have paid had Defendants billed their physical therapy services through the patients' health insurance.

228. In furtherance of the above-described conspiracy, Defendants both individually and in concert with one another committed the overt acts or omissions alleged herein to the economic loss and injury of Plaintiffs and Class members.

229. Defendants conspired with one another by common agreement or understanding for the unlawful purposes of: (a) depriving Plaintiffs and the Class members of their rights under the statutory provisions and common law; and (b) depriving Plaintiffs and Class members of their money and property.

230. Defendants, acting with each other, did unlawfully deprive Plaintiffs and Class members of both their money and property and the rights alleged herein, for the purpose of advancing their conspiracy.

231. Defendants were aware, and had knowledge, of the substantial benefits conferred by Plaintiffs and other Class members on Defendants by their payment of more for Defendants' services than they would have paid had Defendants billed their physical therapy services through the patients' health insurance as a result of Defendants' failure to disclose their illegal billing and illegal, deceptive, unfair, fraudulent, and abusive billing practices to Plaintiffs and the Class.

232. As previously alleged and incorporated herein, all of the Defendants aided, abetted and encouraged the wrongful conduct of one another in the transactions of Plaintiffs and Class members.

233. As a result of Defendants' above-described misrepresentations, failures to disclose and concealments, tortious aiding and abetting of one another in the commission of the above-described unlawful conduct, as well as Defendants' conspiracy to unjustly enrich themselves at the expense of Plaintiffs and the Class, Defendants have come into the possession of money in the

form of payments to which they had, and have, no right at law or in equity, and they have been unjustly enriched at the expense of Plaintiffs and the Class.

234.    Under these circumstances, it would be inequitable for Defendants to retain any such monies that they had no legal right to charge or collect.

235.    As a consequence, Plaintiffs and other Class members have sustained the losses and damages described herein, and Defendants should be required to make restitution to them.

236.    As a result of the foregoing, Plaintiffs and the Class (a) seek an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3); (b) demand judgment against Defendants, jointly and severally, for damages sustained, including restitution, pre-judgment interest and costs for each Class member; (c) request equitable, declaratory, and/or injunctive relief prohibiting Defendants from billing their patients who have health insurance rack-rate costs of service for physical therapy services without regard to the person's health insurance without proper disclosure to consumers; and (d) request such other and further relief as may be just and as the Court deems proper for each Class member.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Clementine Eluh and Stanley Morsberger request that judgment be entered against the Defendants, as follows:

A.    Certifying the Nationwide Class, or, in the alternative, the Maryland Class;

B.    Awarding damages in an amount to be proven at trial;

C.    Awarding punitive damages sufficient to punish Defendants' malicious, willful, reckless, and/or wanton misconduct and deter others from engaging in similar misconduct in the future;

D.    Declaring that Defendants were required to submit Plaintiffs' claims to their insurers or government-sponsored health plans;

E.      Declaring that Defendants are required to accept as payment in full the contractual allowances for the insured patient's physical therapy treatment;

F.      Declaring that Defendants are required to hold insured patients, like Plaintiffs and Class members harmless if Defendants fail or failed to submit their claims to their health insurers;

G.      Enjoining Defendants from failing to submit Plaintiffs' and Class members' claims to their insurers or government-sponsored health plans;

H.      Enjoining Defendants from billing and collecting from Plaintiffs and Class members Defendants' rack-rate costs of service for physical therapy services without regard to the person's health insurance;

I.      Entering an order requiring each Defendant disgorge ill-gotten monies received as a result of violations of law, as described herein;

J.      Entering an order requiring each Defendant to pay all interest due and owing under law, including pre-judgment interest and post-judgement interest, on any funds unlawfully detained;

K.      Entering an order awarding treble damages to Plaintiffs as a result of Defendants' violations of RICO;

L.      Entering an order awarding attorneys' fees and expenses to Plaintiffs; and

M.      Such other and further relief as the Court deems just and proper.


                                            Respectfully submitted,

Dated: March 4, 2022                        _/s/William F. Moore_____
                                            William F. Moore (Illinois Bar No. 6283570)
                                            GRANT & EISENHOFER P.A.
                                            30 N. LaSalle Street, Suite 2350
                                            Chicago, Illinois 60602
                                            (312) 610-5350

(312) 214-0001 (facsimile)
Email: wmoore@gelaw.com

Kelly L. Tucker (*pro hac vice* to be filed)
Laina M. Herbert (*pro hac vice* to be filed)
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, Delaware 19801
(302) 622-7000
(302) 622-7100 (facsimile)
Email: ktucker@gelaw.com
            lherbert@gelaw.com

Richard S. Gordon (*pro hac vice* to be filed)
Sara E. Assaid (*pro hac vice* to be filed)
GORDON, WOLF & CARNEY, CHTD.
100 West Pennsylvania Ave., St. 100
Baltimore, Maryland 21204
(410) 825-2300
(410) 825-0066 (facsimile)
Email: rgordon@GWCfirm.com
            sassaid@GWCfirm.com

*Attorneys for Plaintiffs and
the Putative Class*