IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Stanley Morsberger, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 22 C 1181 |
| ATI Holdings, LLC, *et al.*, | Judge Jorge L. Alonso |
| Defendants. | |

## Memorandum Opinion and Order

Plaintiffs Stanley Morsberger III and Clementine Eluh allege in this putative class action that Defendants ATI Holdings, LLC, Athletic & Therapeutic Institute of Naperville, LLC, d/b/a ATI Physical Therapy, ATI Physical Therapy, Inc., Ray Wahl, John Does 1–10, and Jane Roes 1–40 engaged in unlawful billing practices in a manner that violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, the Illinois Consumer Fraud and Deceptive Practice Act ("ICFA"), 815 ILCS 505/1, *et seq.*, the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13–101, *et seq.*, and state common law.

The Court previously dismissed much of Plaintiff's original complaint, but granted Plaintiffs leave to amend. (ECF No. 56.) Plaintiffs filed an amended complaint on May 12, 2023, which Defendants now move to dismiss. (ECF Nos. 67, 69.) As described below, the Court grants in part and denies in part Defendants' motion (ECF No. 69). The Court also grants the parties' motions to seal their accompanying briefs (ECF Nos. 81, 82, 86).

## Background

In resolving Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not

its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). The Court takes the facts from Plaintiffs' amended complaint.

Plaintiffs Morsberger and Eluh are Maryland citizens who were injured in accidents and ultimately received settlement payments in personal injury suits. Each was treated at an ATI Physical Therapy ("ATI") facility in Maryland. According to Plaintiffs, ATI is comprised of three "categories" of defendants who "associated together under the 'ATI Physical Therapy' umbrella to advertise, market, and otherwise conduct business as one entity": (1) ATI Physical Therapy; (2) the "Subsidiary Defendants," comprised of ATI Holdings, Athletic & Therapeutic Institute of Naperville, and Jane Roes 1–40; and (3) the "Management Defendants," comprised of Wahl (ATI Physical Therapy's former COO) and John Does 1–10. Plaintiffs allege that Defendants engaged in "predatory, fraudulent, and illegal billing practices" by: (1) representing that they would submit Plaintiffs' claims to their insurance carriers but refused to do so; and (2) charging Plaintiffs the "full, rack-rate cost of services, instead of the insurance-negotiated rates they are contractually obligated to charge." The contracts that Plaintiffs refer to are between Defendants and Plaintiffs' health insurers, including Kaiser Foundation Health Plan (in Eluh's case) and Aetna Network Service LLC (in Morsberger's case). Plaintiffs also newly allege that

unnamed "Collection Coconspirators" were part of Defendants' scheme and were involved in servicing Defendants' accounts. (First Am. Compl. ("FAC") ¶¶ 1–6, 11, ECF No. 67.)

## Discussion

1. **Defendants' Motion to Dismiss**

Defendants challenge each of Plaintiffs' claims for failure to state a claim. The Court addresses each claim in turn below and ultimately dismisses all of Plaintiffs' claims except Claim VI as to Plaintiff Eluh and Claims VII–VIII.

### A. RICO Claims (Counts I–III)

Plaintiffs bring three counts alleging a RICO conspiracy among Defendants and the Collection Coconspirators. For the reasons below, the Court again dismisses Plaintiffs' RICO claims for failure to sufficiently allege a RICO enterprise.

At the outset, the Court denies Plaintiffs' apparent attempt at reconsideration of the Court's earlier finding of no enterprise among the various defendants. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (listing grounds for a motion for reconsideration). The Court previously denied Counts I–III because they failed to plead the existence of a cognizable RICO enterprise among Defendants. (*See* ECF No. 56 at 16–19.) Plaintiffs' amended complaint does not add any material allegations about the Defendants. Plaintiffs also do not explain why the Court should change its prior conclusion that the Defendants themselves do not form a RICO enterprise based on Plaintiffs' allegations—they hardly mention the Court's prior order—but instead rehash the same basic arguments the Court previously rejected. The Court therefore maintains its prior finding that, based on Plaintiffs' pleading, Defendants did not form a RICO enterprise solely among themselves.

The Court therefore turns to whether Plaintiffs have pleaded a RICO enterprise by alleging the additional involvement of independent and unaffiliated "Collection Coconspirators" as part of the enterprise. Plaintiffs argue that their new allegations sufficiently allege a RICO enterprise because they describe the Collection Coconspirators' involvement in servicing Defendants' accounts, which allegedly were handled unlawfully.

Plaintiffs' allegations do not suffice. A RICO enterprise is not formed from a mere "run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest," but instead requires "a truly joint enterprise where each individual entity acts in concert with the others to pursue a common interest." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655–56 (7th Cir. 2015). This can be satisfied by for example, allegations of "an unusual degree of economic interdependence among the entities" or that "the entities do not operate as completely separate entities in managing the loan rehabilitation process." *Id.* at 656. Factors such as "sharing profits (or otherwise comingling illicit proceeds) might show a 'common purpose' under RICO," though shared profits are not required for a RICO enterprise. *Menzies v. Seyfarth Shaw LLP*, 197 F. Supp. 3d 1076, 1095 (N.D. Ill. 2016).

Here, Plaintiffs' allegations do not go beyond a run-of-the-mill business relationship between Defendants and the Collection Coconspirators. Instead, they describe an unremarkable arrangement in which Defendants set policies for servicing its accounts, and would at times use the Collection Coconspirators' services to do so. (*See, e.g.*, FAC ¶¶ 61, 144.) *See Taylor v. Ocwen Loan Servicing, LLC*, No. 4:16-cv-04167-SLD-JEH, 2017 WL 3443209, at *4 (C.D. Ill. Aug. 10, 2017) ("Not every case of alleged fraud on the part of a debt servicer is a RICO enterprise by simply virtue of aligned incentives. Rather, the Seventh Circuit has explained, more detailed allegations of entanglement between enterprise members are required[.]"). Plaintiffs otherwise

4

make basic, conclusory allegations that the Collection Coconspirators were part of an alleged enterprise, without explaining how their association with Defendants was more than a garden-variety business relationship done in the Collection Coconspirators' ordinary self-interest. (*See, e.g.*, *id.* ¶ 60 (stating generally that "Defendants associated together with the Collection Coconspirators under the ATI Physical Therapy enterprise . . .").) *Compare with Menzies*, 197 F. Supp. 3d at 1095 (finding adequate RICO allegations that "Defendants planned and worked in concert, even referring business to one another vital to the fraud," and "performed other services . . . all in aid of a single overall scheme that generated sustained profits for the enterprise membership"). The Court therefore dismisses Counts I–III of Plaintiffs' amended complaint for failure to allege a RICO enterprise.

### B. Declaratory Judgment Claim (Count IV)

In Count IV, Plaintiffs seek two declarations relating to Defendants' contractual obligations under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* Defendants argue that these requested declarations are duplicative of Plaintiffs' other substantive claims and therefore should be dismissed. Plaintiffs summarily counter that Count IV seeks remedies not available under other causes of action, and the Court therefore should exercise its discretion not to dismiss Count IV.

As Plaintiffs note, "[t]he decision to entertain a declaratory judgment action lies within the discretion of the district court, and is not precluded by the availability of another form of relief." *In re JPMorgan Chase Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859, 877 (N.D. Ill. 2011) (citing Fed. R. Civ. P. 57). However, Plaintiffs have not argued how the substantive issues the Court will resolve for its other claims do not sufficiently overlap with Claim IV's requested declarations. "The focus of the Court's analysis is not on the relief

5

requested, but whether the substantive issues that must be decided by the Court are duplicative. In fact, courts routinely dismiss declaratory judgment claims as duplicative of substantive claims even when the relief requested may differ." *Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015). Here, Plaintiffs make no attempt to distinguish the issues raised by Count IV from those that will be decided in Plaintiffs' other claims—most notably, Plaintiffs' surviving MCPA claim. The Court therefore dismisses Count IV as duplicative.

### C. ICFA Claim (Count V)

The Court previously dismissed Plaintiffs' original Count V because it did not sufficiently allege that the disputed transactions between Plaintiffs and Defendants occurred primarily and substantially in Illinois to avoid extraterritorial application of the ICFA. The Court reaches the same conclusion as to Plaintiffs' amended Count V.

Plaintiffs' amended complaint adds several new allegations, mostly that various Defendants and relevant employees were in Illinois, including when signing the relevant contracts, and contractual notices were to be made to Defendants in Illinois. (FAC ¶¶ 124, 126–33.) Plaintiffs claim that these allegations show that enough relevant conduct occurred in Illinois to state an ICFA claim. Defendants argue that Plaintiffs' new allegations do not fundamentally change the analysis and the Court should again dismiss Plaintiffs' ICFA claim.

To decide whether the disputed transaction occurred primarily in Illinois, a court considers several factors, including

> (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where

>payments for services were to be sent; and (9) where complaints about the goods or services were to be directed.

*Beaton v. SpeedyPC Software*, No. 13-cv-08389, 2023 WL 2711416, at *7 (N.D. Ill. Mar. 30, 2023) (citation omitted).

The Court previously analyzed Plaintiffs' original complaint and concluded that it did not sufficiently allege conduct occurring primarily and substantially in Illinois in light of *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 510 N.E.2d 840 (1987), and *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005). It specifically pointed out that Plaintiffs' original complaint did "not allege that ATI executed its contracts in Illinois or that those contracts contained forum-selection or choice-of-law clauses favoring Illinois," and ultimately concluded that Plaintiffs' allegations were "more akin to *Avery* than to *Martin*." (ECF No. 56 at 21–22.)

To their credit, Plaintiffs now allege that Defendants signed the relevant contracts in Illinois and that that Defendants' benefits coordination department and their "API Litigated Team," which places liens as part of Defendants' alleged scheme, is in Illinois. Notwithstanding the Court's prior emphasis that Plaintiffs' ICFA claim may not rely on purported breaches of contract, this "is nonetheless a mark in plaintiffs' favor." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011).

However, it does not change the ultimate outcome. As the Court already stated, the place where a policy or document is drafted, though relevant, is "not dispositive," and it is not "enough to allege that a scheme to defraud was disseminated from a defendant's headquarters." (ECF No. 56 at 22 (internal quotation marks and citations omitted).) Plaintiffs' new allegations merely flesh out Defendants' Illinois presence given its Illinois headquarters and do not present meaningful new allegations regarding whether the relevant transactions primarily and

7

substantially occurred in Illinois. There is no indication that Plaintiffs interacted with anyone in Illinois, even if Defendants and their Illinois employees put together their allegedly unlawful scheme from their Illinois headquarters. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 (7th Cir. 2009) (affirming dismissal of ICFA claim where the plaintiff "resides in Florida, received promotional insurance materials there, entered into and renewed his insurance there, submitted claims there, and was allegedly deceived there"); *see also Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *4 (N.D. Ill. Aug. 23, 2012) (finding no ICFA standing where defendant merely was "headquartered in Illinois" and "designed its allegedly deceptive scheme in Illinois"). Instead, all of Plaintiffs' ATI-related contact appears to have occurred outside of Illinois, including their treatment and injuries, and Plaintiffs do not allege that they interacted with anyone in Illinois related to their IFCA claim. *See Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011 WL 4496154, at *7 (N.D. Ill. Sept. 27, 2011) ("There is no indication in the complaint that Brown, a New Jersey citizen, had any relevant contact with Abbott in Illinois."). Plaintiffs may not bring an extraterritorial IFCA claim, and the Court therefore dismisses Count V.

### D. MCPA Claim (Count VI)

Defendants newly challenge Count VI as to Plaintiff Eluh only, claiming that certain terms of an agreement between ATI and Eluh's insurer, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), preclude Eluh from alleging an injury or loss as required for a Maryland Consumer Protection Act claim. *See Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 277 (2007) ("[A] private party suing under the [MCPA] must establish actual injury or loss." (internal quotation marks and citations omitted)).

Plaintiffs' Count VI alleges that they were injured because they paid higher rates than they would have paid had Defendants billed their services through Plaintiffs' health insurance providers like Kaiser. (FAC ¶¶ 225, 233–34.) But as Defendants point out, based on Defendants' agreement with Kaiser (which Plaintiffs incorporated into their amended complaint), Kaiser would not have covered Eluh's treatment in any event—thus fully refuting the basis for Plaintiffs' claimed injury as to Eluh. *See Vongohren v. Citimortgage, Inc.*, Civil No. JFM-14-3549, 2016 WL 739070, at *6 (D. Md. Feb. 25, 2016) (finding no actual injury under the MCPA where a contract showed that the plaintiffs "would have suffered the same injuries" even assuming the alleged misrepresentations). Because Plaintiffs have not pleaded an actual injury to Eluh under the MCPA, the Court dismisses Count VI as to Eluh only.

### E. Unjust Enrichment and Money Had and Received Claims (Counts VII and VIII)

The Court previously dismissed Plaintiffs' unjust enrichment and money had and received claims because the claims were not entirely premised on extra-contractual conduct and incorporated allegations that Defendants' behavior was contractually prohibited. In their amended complaint, Plaintiffs carve out their contract-related allegations from these claims and focus on Defendants' representations, advertisements, and communications regarding how insurance and billing would be handled. (*See* FAC ¶¶ 235–238, 244, 247–249.) According to Plaintiffs, because Defendants' allegedly false advertisements are the basis for the amended claims, the claims no longer rely on governing contracts.

Plaintiffs' amended Counts VII and VIII therefore purport to solely target Defendants' advertisements, representations, and communications, rather than the agreements Defendants executed. Still, those agreements addressed the same subject matter as is the subject of Counts

9

VII and VIII—how Defendants would handle insurance and billing.[1] *See Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ("In Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." (citations omitted)); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) ("[A] plaintiff may not pursue a quasi-contractual claim where there is an enforceable, express contract between the parties."); *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir. 2008) ("[D]amages for unjust enrichment are not awardable when, as here, there is a contract between the parties on the subject in dispute."). Plaintiffs nevertheless may plead Counts VII and VIII in the alternative if they do so by pleading that if there is not an express contract that applies, Defendants are liable for unjust enrichment or money had and received. *See Cohen*, 735 F.3d at 615. Here, Plaintiffs have done so—they newly clarify that they are entitled to relief "[e]ven if there are no enforceable contractual obligations on the part of Defendants." (FAC ¶ 236.) Accordingly, the Court denies Defendants' motion to dismiss as to Counts VII and VIII.

2. **The Parties' Motions to Seal**

The parties have moved for leave to file their response and reply briefs under seal because those briefs reference information that the Court previously kept under seal. (*See* ECF Nos. 30, 66, 81, 82, 86.) The Court finds good cause for keeping this information, and the parties' references to it, under seal. Still, the parties must publicly file redacted versions of their briefs, which shall redact only portions quoting or referencing the sealed information.

---

[1] The contracts were executed between Defendants and health insurers, not between Defendants and Plaintiffs, but Plaintiffs claim to be third-party beneficiaries of those contracts. (FAC ¶¶ 176, 192.)

## Conclusion

The Court grants in part and denies in part Defendants' motion to dismiss (ECF No 69). The Court dismisses Counts I–V in their entireties and dismisses Count VI as to Plaintiff Eluh only; Plaintiff's remaining claims are Count VI as to Plaintiff Morsberger and Counts VII–VIII in their entireties.

The Court grants the parties' motion to seal (ECF Nos. 81, 82, 86). Plaintiffs shall publicly file a redacted version of their Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint within fourteen days of the entry of this order. Defendants shall publicly file an updated redacted version of their Reply in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Class Action Complaint within seven days thereafter.

**SO ORDERED.**                                                              **ENTERED: January 26, 2024**

                                                                             **HON. JORGE ALONSO**
                                                                             **United States District Judge**

11